[No. B008565. Second Dist., Div. Two. Dec. 29, 1986.]

HELEN BAKER, Plaintiff and Respondent, v.
CITY OF LOS ANGELES, Defendant and Appellant.

COUNSEL

James K. Hahn, City Attorney, John T. Neville, Senior Assistant City Attorney, Richard M. Helgeson, Assistant City Attorney, and Katherine J. Hamilton, Deputy City Attorney, for Defendant and Appellant.

Morton L. Shatzkin and Suzanne Leibowitz for Plaintiff and Respondent.

OPINION

BEACH, J.—Appeal by defendant City of Los Angeles from denial of a motion for judgment notwithstanding the verdict in a negligence action. Cross-appeal asking for limited new trial on issue of damages. Reversed.

The sole issue we need consider here is whether appellant owed a duty to respondent. All of the other issues argued by appellant and respondent are rendered moot by our decision that no duty existed.

FACTS:[1]

Respondent and her intoxicated husband (Marcus) had an argument in their apartment on January 5, 1977, and Marcus threatened to shoot respondent. Respondent went to a neighboring apartment to call police officers employed by appellant. When the officers arrived they observed Marcus standing in the kitchen waving a gun. Marcus dropped the gun when ordered to do so. The officers decided that no crime had been committed but one of them, Officer Winter, confiscated the gun for respondent's protection.

On the following night different police officers responded to another family disturbance call at the same residence. After respondent told the officers that Marcus had filed a false stolen property report to collect insurance, Marcus assaulted a police officer and was arrested.

On January 24, 1977, Marcus was sentenced to 10 days in jail and was placed on 3 years probation. One of the conditions of probation was that he not possess a dangerous weapon.

Marcus picked up the gun at the police station on February 18, 1977.

Respondent moved out of the couple's apartment after the second incident and remained separated from Marcus until July of 1977. Respondent knew that Marcus had the gun in his possession when they reconciled.

On September 5, 1977, the police were called to respondent's apartment because of another family quarrel. Respondent told the officers that Marcus had a gun and asked them to take it. The police suggested that respondent leave the apartment but she decided to stay because she felt Marcus should be the one to leave.

After the police left the apartment, Marcus shot respondent, shattering her hip.

Respondent sued appellant, among others, for damages. Her action against appellant was founded on its employees' allegedly negligent act of returning the gun to Marcus.

---

[1]All facts are stated in the light most favorable to the respondent.

During a hearing on a pretrial motion, the trial court stated that respondent had "a right to proceed under Mann and Williams" because once the police took the gun into their possession, "they then had an obligation to exercise reasonable care in returning it."

At trial respondent presented uncontroverted evidence of special damages of approximately $400,000.

Appellant's witnesses testified that there were no procedures for determining if a party retrieving a gun from custody of the police was under any restrictions as to his right to possess a weapon.

During deliberations the jury asked the trial court if appellant was liable for failure to establish a procedure for determining the status of one who was retrieving a weapon and was informed that they should consider whether appellant should have established such a procedure.[2]

The jury's verdict against appellant awarded respondent $75,000 for damages.

Appellant's motions for judgment nothwithstanding the verdict and for a new trial were denied.

DISCUSSION:

*Did appellant have a duty to protect respondent?*

■ As a general rule, absent a special relation or circumstance, "one has no duty to control the conduct of another." (*Peterson* v. *San Francisco*

---

[2]The question posed by the jury was: "Please confirm whether the following represents the basic issue of this case: Helen Baker is suing the City of Los Angeles because of (*sic*) L.A.P.D. was negligent in that it did not have a policy to check the personal status of all individuals to whom a gun is being returned (even involuntarily booked.)" The court replied: "The answer to the question, the issue to be decided by you is whether the city was negligent in returning the gun to Mr. Baker. One of the matters you may consider, along with all of the evidence and the instructions, is whether the city should have had a procedure for checking the individual before a weapon was returned after having been booked."

By giving this answer, the trial court placed the jury in the position of second-guessing the policymaking decisions of the governing agencies (administrative and/or legislative) of the City of Los Angeles. Unless there is "an assurance of judicial abstention in areas in which the responsibility for basic policy decisions has been committed to coordinate branches of government," courts find themselves "in the unseemly position of determining the propriety of decisions expressly entrusted to a coordinate branch of government." (*Johnson* v. *State of California* (1968) 69 Cal.2d 782, 793 [73 Cal.Rptr. 240, 447 P.2d 352].) If we were to find duty and causation here, which we do not, it would be necessary to order a new trial because of this prejudicial error in answering the jury's question.

*Community College Dist.* (1984) 36 Cal.3d 799, 806 [205 Cal.Rptr. 842, 685 P.2d 1193].) Respondent acknowledges that under ordinary circumstances appellant's police officers had no duty to prevent Marcus from injuring her.

Additionally, "[a] person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act." (*Williams* v. *State of California*, (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr. 233, 664 P.2d 137]; *Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197 [185 Cal.Rptr. 252, 649 P.2d 894]; *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 444 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]; Rest.2d. Torts, § 314.) Accordingly, appellant can not be held liable for the injuries inflicted upon respondent by Marcus unless such a special relationship exists. (*Harris* v. *Smith* (1984) 157 Cal.App.3d 100, 105 [203 Cal.Rptr. 541].)

The court found as a matter of law that such a special relationship existed here and gave an instruction on the voluntary assumption of a duty in aid of another, the "good Samaritan" rule.[3] The "good Samaritan" has a duty to exercise due care in rendering aid and is liable if "his failure to exercise such care increases the risk of harm or if harm is suffered because of another's reliance on the undertaking." (*Williams* v. *State of California, supra,* 34 Cal.3d 18, 23.)

*Was the risk of harm increased?*

Here Officer Winter did not increase the risk of harm to respondent and in fact decreased that risk by taking the gun from her intoxicated husband. Nevertheless, respondent purported to establish liability at trial on the theory that the police had increased her risk of harm by returning the gun to Marcus.

The duty of a "good Samaritan" is limited. Once he has performed his voluntary act he is not required to continue to render aid indefinitely. When he took the gun, Officer Winter voluntarily entered into a special relationship with respondent for the limited purpose of protecting her from the potential harm that threatened her at the moment. He did not become a guarantor of her future safety. Absent an express or implied promise to render additional aid, his duty ended when he took the gun from the premises and

---

[3]The instruction stated: "You are hereby instructed that in January 6, 1979, when officer Mark Winter left the residence of Marcus and Helen Baker and took with him Marcus Baker's revolver, he acted as a volunteer. One who is under no duty to care for or render services to another, but who voluntarily assumes such duty is subject to liability to the other for injuries legally caused by failure to exercise ordinary or reasonable care in the performance of such assumed duty."

left it at the police station for Marcus to pick up when he was no longer intoxicated.

 Additionally, the relationship established by the voluntary act of a "good Samaritan" is also limited. It can not be expanded to draft all "Samaritans" into an army obligated to the person aided. The word voluntary means "arising from one's own free will." (American Heritage Dict. (2d college ed. 1983)) Thus, only the one who willingly takes on the duties of a "good Samaritan" can be held to have assumed a duty to care to those he is helping.

Here both respondent and the trial court took the position that Officer Winter's act brought the entire Los Angeles Police Department into a special relationship with respondent. It is understandable how such an assumption arose. The cases speak of the duty of the state (*Williams* v. *State of California, supra,* 34 Cal.3d 18), the police (*McCorkle* v. *City of Los Angeles* (1969) 70 Cal.2d 252 [74 Cal.Rptr. 389, 449 P.2d 453]), or the highway patrol (*Williams* v. *State of California, supra*). However, if one examines those cases, it is clear that the court is imposing the duty of care only on the person or persons who voluntarily assumed a duty. (For example: in *Williams,* the highway patrol officers at the scene of the accident could be found to have breached a duty if their actions induced detrimental reliance; in *McCorkle,* the police officer who led the plaintiff into a dangerous area had a duty to protect the plaintiff.)

Additionally, the cases do not always make clear the distinction between duty and liability. Clearly under the rule of respondeat superior an employing agency will be liable for any breach of duty by its volunteering employee, but it is the employee not the agency who has entered into a special relationship.[4]

 Officer Winter did not return the gun to Marcus. The officer who did return the gun followed established police procedures. Absent a special relationship with respondent, he had no duty to protect respondent (*Jackson* v. *Clements* (1983) 146 Cal.App.3d 983 [194 Cal.Rptr. 553]) by determining whether there were any restrictions on Marcus's right to possess a weapon. Additionally, even if the officer had owed some duty to respondent, absent a statute or department regulation requiring him to do so, he had no duty to check the record because conditions are attached to the granting of proba-

---

[4]The general public would be harmed by a rule that the voluntary act of a police officer, highway patrol officer or other government employee imposes a duty on all members of the employing agency. The agency would undoubtedly issue orders that its employees were to do no more than the law required. Thus the public would be deprived of the aid which helpful and considerate employees are voluntarily willing to give.

tion to restrict the conduct of the probationer, not to compel conduct by the police.

*Was respondent harmed through detrimental reliance?*

Many cases have held the "good Samaritan" liable because he breached an express or implied promise to render further aid to the plaintiff.

In *Clemente* v. *State of California* (1985) 40 Cal.3d 202 [219 Cal.Rptr. 445, 707 P.2d 818], a pedestrian who relied on a highway patrol officer to investigate an accident was entitled to damages for his economic injury caused by the negligent investigation because the officer's actions had induced reasonable reliance. In *Mann* v. *State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82], a highway patrol officer parked his car with its lights flashing behind stalled motorists and then withdrew without warning and the court held that he could be held liable for the resulting injuries when the motorists who had relied on his protection were struck by another car.

Here respondent did not allege that Officer Winter made any representation to her as to when and under what circumstances the gun would be returned to Marcus. Furthermore her testimony that she knew Marcus had the gun when they reconciled shows that she did not rely on any implied promise that the gun would not be returned.

At trial, respondent's only testimony concerning reliance was that when the police were called on September 5th: "I thought I could rely on the policeman to take the gun away from him . . . (b)ecause they had taken it away from him before." Clearly, as discussed above, the act of one policeman in voluntarily assuming a duty could not obligate the police department to protect respondent indefinitely. When the police officers left, respondent knew they had not taken the gun with them and voluntarily remained in the apartment.

On these facts the trial court should have granted the motion for judgment nothwithstanding the verdict. Respondent failed to establish that appellant owed her a duty of care beyond that which appellant had fully met.

Since we find no duty existed, it is unnecessary to discuss the issues of causation and statutory immunity. (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197 [185 Cal.Rptr. 252, 649 P.2d 894].)

*Cross-appeal.*

In view of our decision concerning judgment notwithstanding the verdict, we need not consider the cross-appeal for inadequate damages.

The judgment is reversed. The trial court is ordered to enter judgment notwithstanding the verdict for appellant. Each party to bear its own costs on appeal.

Compton, Acting P. J., and Gates, J., concurred.

Respondent's petition for review by the Supreme Court was denied March 18, 1987.