Filed 12/23/20  K.C. v. County of Ventura CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| K.C., a Minor, etc., et al.,<br><br>　　Plaintiffs and Appellants,<br><br>v.<br><br>COUNTY OF VENTURA et al.,<br><br>　　Defendants and Respondents. | 2d Civ. No. B302229<br>(Super. Ct. No. 56-2019-00523653-CU-PO-VTA)<br>(Ventura County) |

　　　　Plaintiffs K.C. and K.C. (Plaintiffs) appeal from the judgment after the trial court sustained the County of Ventura's (the County) demurrer to the first amended complaint without leave to amend.  We affirm.

**FACTUAL AND PROCEDURAL HISTORY**

　　　　Plaintiffs are the children of P.S. and Kevin C.  In September 2014, a Ventura County Sheriff's Deputy arrested Kevin C. after a domestic dispute in which P.S. suffered injuries. Upon arrest, deputies seized Kevin C.'s gun.  The District Attorney charged Kevin C. with misdemeanor battery.  It requested the court to "formally" order the gun confiscated.  The

trial court did so in November 2014. The sheriff did not receive a copy of the court's order from the district attorney until 11 months later in October 2015.

In the meantime, the district attorney successfully moved to dismiss the battery charge against Kevin C. in January 2015. Kevin C. subsequently filed an application to the Department of Justice (DOJ) for the release of his gun. The DOJ then sent him a letter stating he was eligible to possess a gun. The sheriff returned the gun to Kevin C. in March 2015. In October 2015, the sheriff received a copy of the confiscation order for the first time, but took no action to retrieve the gun. Three years later, Kevin C. shot and killed P.S. using the same gun. Plaintiffs filed a complaint alleging wrongful death against the County and other defendants.[1]

The first amended complaint alleges that the County acted negligently when it mishandled the court's confiscation order. (Gov. Code,[2] §§ 815.2, subd. (a), 820, subd. (a)). Plaintiffs allege the district attorney's failure to timely transmit the confiscation order to the sheriff resulted in the improper release of the gun to Kevin C. Plaintiffs also allege that the sheriff failed to retrieve the gun after learning of the "mistake." Plaintiffs allege these negligent acts caused P.S.'s death.

The County demurred to the first amended complaint. It argued the complaint did not state sufficient facts

---

[1] The first and second causes of action for negligence were alleged only against the County. The other causes of action were not against the County.

[2] Further unspecified statutory sections are to the Government Code.

2

to support the negligence causes of action because the Plaintiffs did not establish the elements of duty and causation.  The County also argued that it was immune from liability pursuant to sections 818.2 and 821.6 and Penal Code section 18500.

The trial court sustained the demurrer without leave to amend.  The court found that the allegations in the first amended complaint do not establish the elements of duty or causation and that immunity pursuant to sections 818.2 and 821.6 and Penal Code section 18500 applies.  The court entered judgment in favor of the County.

## DISCUSSION
### *Demurrer*

Plaintiffs contend the trial court erred when it sustained the demurrer without leave to amend because (1) the complaint pled sufficient facts to establish the duty and causation elements of the negligence causes of action; (2) immunity pursuant to Penal Code section 18500 does not apply; and (3) immunity pursuant to sections 818.2 and 821.6 does not apply.  We conclude the court properly sustained the demurrer.

We independently review the order sustaining the demurrer, accepting as true "'all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  We interpret the complaint "reading it as a whole and its parts in their context." (*Ibid.*)  A demurrer should be sustained where the complaint fails to allege facts sufficient to state a cause of action, or discloses a defense that would bar recovery.  (Code Civ. Proc., § 430.10; *Balikov v. Southern Cal. Gas Co.* (2001) 94 Cal.App.4th 816, 819.)

To prevail on a negligence cause of action, a plaintiff must prove the elements of duty, breach, causation, and injury. (*Vasilenko v. Grace Family Church* (2017) 3 Cal.5th 1077, 1083.) "The existence of a duty is a question of law, which we review de novo." (*Ibid.*)

Plaintiffs argue the County owed a duty to protect P.S. from Kevin C.'s access to the gun. We disagree. "'Where a legal duty is not created by statute, the question of whether a legal duty exists is analyzed under general principles of tort law.' [Citation.]" (*Frausto v. Department of California Highway Patrol* (2020) 53 Cal.App.5th 973, 989.)

"As a general rule, absent a special relation or circumstance, 'one has no duty to control the conduct of another.' [Citation.]" (*Baker v. City of Los Angeles* (1986) 188 Cal.App.3d 902, 906-907 (*Baker*).) A "'person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act.' [Citations.]" (*Id.* at p. 907.) As it pertains to this case, "'law enforcement officers, like other members of the public, generally do not have a legal duty to come to the aid of [another] person . . . .' [Citation.]" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1129.) Moreover, a person who volunteers aid is not obligated to continue that aid indefinitely. (*City of Santee v. County of San Diego* (1989) 211 Cal.App.3d 1006, 1015, 1018 (*City of Santee*) [extending the duration and scope of a duty to require indefinite future aid would be "particularly inappropriate" if applied to law enforcement officers because it could discourage voluntary aid to imperiled citizens].)

4

Here, there was no special relationship between the County and P.S. after the County confiscated Kevin C.'s gun. In *Baker*, *supra*, 188 Cal.App.3d 902, the Court of Appeal held under similar circumstances that a city was not liable for a wife's gunshot injuries inflicted by her husband because there was no special relationship between the wife and the City. There, police officers responded to the wife's 911 call after her husband threatened to shoot her. After they arrived, a police officer confiscated the husband's gun. (*Id.* at p. 905.) The next night, different police officers responded to another domestic dispute at the home and arrested the husband. He was convicted and placed on three years' probation with a condition prohibiting weapons possession. (*Ibid.*)

A month after his sentence, the police released the gun back to the husband. (*Id.* at p. 905.) Seven months later, the husband shot the wife. (*Ibid.*) The wife sued the City, alleging that the police acted negligently when they returned the gun to her husband. (*Ibid.*) The jury found in favor of the wife, but the Court of Appeal reversed. (*Id.* at pp. 906-907.)

The Court of Appeal determined that the City did not owe a duty to the wife. (*Baker*, *supra*, 188 Cal.App.3d at p. 907.) The City could only have owed a duty under the "'good Samaritan'" rule, pursuant to which the "'good Samaritan' has a duty to exercise due care in rendering aid and is liable if 'his failure to exercise such care increases the risk of harm or if harm is suffered because of another's reliance on the undertaking.' [Citation.]" (*Ibid.*) The court noted that the duty of a "'good Samaritan'" is a limited one. Once they have performed a voluntary act, they are "not required to continue to render aid indefinitely." (*Ibid.*) Thus, when the first officer confiscated the

5

husband's gun, he voluntarily entered into a special relationship with the wife for "the limited purpose of protecting her from the potential harm that threatened her *at the moment*"; but, he "did not become a guarantor of her future safety." (*Ibid.,* emphasis added.) His duty ended once the gun was transported to the police station. (*Id.* at pp. 907-908.)

The court further explained that "the relationship established by the voluntary act of a 'good Samaritan' is also limited." (*Baker*, *supra,* 188 Cal.App.3d at p. 908.) The voluntary conduct of one officer does not impose a duty of care on all other officers in the police department. (*Id.;* see also *Weissich v. County of Marin* (1990) 224 Cal.App.3d 1069, 1077-1078 (*Weissich*).)

Here, like *Baker*, the sheriff owed no duty to protect P.S. beyond the initial domestic violence incident. Any limited duty to protect P.S. from Kevin C.'s threats ended once the gun was removed from the home. (*Baker*, *supra*, 188 Cal.App.3d at pp. 907-908.) There was no continuing obligation to protect P.S., especially under these circumstances where the fatal shooting took place years after the underlying domestic violence charges were dismissed and the gun returned. (*City of Santee*, *supra*, 211 Cal.App.3d at p.1015; see also *Weissich*, *supra*, 224 Cal.App.3d at p. 1079 ["it would be unreasonable" to interpret an implied promise made eleven years prior as imposing a duty that obligated the defendants "in perpetuity"].) Furthermore, any special relationship between the deputy who confiscated the gun and P.S. did not extend to all County workers. (*Baker*, *supra,* at pp. 908-909.)

Plaintiffs argue that *Baker* is distinguishable because the statutory sections governing the seizure of a gun during a

6

domestic violence incident (Pen. Code, § 18250, et seq.), have changed since *Baker* was decided. Assuming the gun was seized under Penal Code section 18250, et seq.,[3] Plaintiffs do not show how the new statutory scheme distinguishes this case from *Baker*.

Plaintiffs assert for the first time in their reply brief that the court's confiscation order was made pursuant to Penal Code section 18400, and that the County was prohibited from returning the gun unless "there is further court action ordering its return." But, a "party may not raise an issue for the first time on appeal [citation], and points raised for the first time in a reply brief on appeal will not be considered, absent good cause for failure to present them earlier [citation]." (*Nordstrom Com. Cases* (2010) 186 Cal.App.4th 576, 583.) Plaintiffs have not demonstrated good cause here. In any event, Penal Code section 18400 describes the process by which law enforcement can petition the court, in instances where the agency believes the return of the firearm would create a danger, to determine whether a firearm should be returned. That was not done here, and Plaintiffs fail to establish that the County had a duty to file such a petition.

Plaintiffs also assert that the "specific procedures governing the seizure and return of firearms" required the district attorney to timely file the confiscation order with the sheriff. Plaintiffs do not specify what these procedures were, and how they relate to the release of the gun. They do not show the

___

[3] Penal Code section 18250 states that a sheriff "shall take temporary custody" of a gun discovered at the scene of a domestic violence incident.

confiscation order or any "specific procedures" imposed a duty upon the County to prevent the release of the gun.

Plaintiffs further contend the County created a special relationship with P.S. because it "lulled" P.S. into a false sense of security. Plaintiffs rely on *Wallace v. City of Los Angeles* (1993) 12 Cal.App.4th 1385 (*Wallace*), and *Carpenter v. City of Los Angeles* (1991) 230 Cal.App.3d 923 (*Carpenter*). These cases are distinguishable. In both of those cases, there was sufficient evidence to show a special relationship between the City and the victims because the victims assisted the prosecution as witnesses in pending criminal cases. (*Wallace*, *supra*, at pp. 1397-1398 [victim was set to testify as a witness in a homicide trial before she was murdered]; *Carpenter*, *supra,* at pp. 927-928 [robbery victim testified in the preliminary hearing and was shot before he testified at trial].) The courts held that a special relationship is created when a public employee asks a private citizen to assist in a public function which involves a foreseeable risk of injury. (*Wallace, supra*, at p. 1400; *Carpenter*, *supra*, at p. 933.) Where such a special relationship exists, the public employee has a duty to warn of threats known to the employee. In both cases, the officers either failed to tell the victims about threats or minimized them, and the officers assured the victims of their safety. Such actions "lulled" the victims into a false sense of security. (*Wallace*, *supra,* at p. 1401; *Carpenter*, *supra*, at p. 933-934.)

Unlike *Wallace* and *Carpenter*, there was no special relationship here. The County did not make any assurances of P.S.'s safety, and Plaintiffs do not allege that she relied upon any.

Because we conclude the complaint does not establish the element of duty, we need not address the issues of causation

8

and statutory immunities. "A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

### Leave to Amend

Plaintiffs contend the trial court erred when it did not grant them leave to amend the first amended complaint. We again disagree.

We review the court's order for abuse of discretion, "which is demonstrated if there is a reasonable possibility that the pleading could be cured by amendment." (*Ochs v. PacifiCare of California* (2004) 115 Cal.App.4th 782, 796.) "The plaintiff has the burden of showing that the pleading can be cured, but may make this showing for the first time on appeal." (*Ibid.*)

Plaintiffs have not carried their burden to show that the pleading could be cured by an amendment. In fact, Plaintiffs had an opportunity to cure the complaint in the court below. After filing their initial complaint, the County demurred on similar grounds, and Plaintiffs did not include any additional facts in their first amended complaint to cure the defects raised. The trial court did not abuse its discretion.

### DISPOSITION

The judgment is affirmed. The County shall recover costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

TANGEMAN, J.

We concur:

GILBERT, P. J.          YEGAN, J.

9

Vincent J. O'Neill, Jr., Judge

Superior Court County of Ventura

_____


       The Wallace Firm, Bradley S. Wallace; and Joseph S. Socher for Plaintiffs and Appellants.

       Lawrence Beach Allen & Choi, Paul B. Beach, James S. Eicher, Jr. and Rocco Zambito, Jr. for Defendants and Respondents.