Filed 5/21/13  Certified for publication 6/19/13 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

**AUDREY SMITH et al.,**

      *Plaintiffs and Appellants,*

      v.

**ST. JUDE MEDICAL, INC.
et al.,**

      **Defendants and Respondents.**

_____/

**A135338**

**(Alameda County
Super. Ct. No. RG09470457)**

Plaintiffs are the five adult children and mother of the decedent, Patricia Amonoo, who died following cardiac pacemaker surgery in 2008.  Plaintiffs sued St. Jude Medical, Inc. (St. Jude), Jeremy Kosel (collectively, defendants), and others involved in the surgery for, among other things, wrongful death as a result of defendants' negligence.  The trial court granted St. Jude's motion for summary judgment, concluding defendants did not owe Amonoo a duty of care "with respect to the acts or omissions that allegedly caused her injury and death" and that plaintiffs "lack[ed] evidence that any acts or omissions by Kosel breached his duty of care under the circumstances or proximately caused the injury or death."

Plaintiffs appeal.  They contend the court erred by granting summary judgment because: (1) they did not have a sufficient opportunity to conduct discovery to oppose the motion; (2) defendants did not satisfy their initial burden of production; (3) they raised a

1

triable issue of material fact regarding whether defendants negligently undertook a duty to monitor Amonoo during or after the surgery; and (4) the court improperly relied on *Kennedy v. Medtronic* (Ill. App. 2006) 851 N.E.2d 778 (*Kennedy*).[1]

We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Dr. La Viola, an employee of Permanente Medical Group (Kaiser), implanted the cardiac pacemaker in Amonoo on October 29, 2008, at Dameron Hospital in Stockton. St. Jude sold the pacemaker leads that Dr. La Viola prescribed and implanted in Amonoo. Kosel, a St. Jude employee, supplied the pacemaker leads and was present during Amonoo's surgery to operate St. Jude's pacing system analyzer (PSA), a device used to test the status and level of function of the pacemaker and leads. The implantation of the pacemaker perforated the right atrium and ascending aorta of Amonoo's heart, causing "'cardiac tamponade[,]'" or the accumulation of blood around her heart. Amonoo died shortly after the surgery.

In August 2009, plaintiffs filed a wrongful death and survival action against Dr. La Viola, Kaiser, Dameron Hospital Association (Dameron), and various doe defendants. Plaintiffs alleged "[t]he infliction of the cardiac perforations themselves may or may not constitute medical negligence. But negligence is clear in that Defendants' contemporaneous and post-operative monitoring of Ms. Amonoo must have been casual in the extreme for them to have failed to recognize and, for a considerable length of time, remained entirely unaware of, such substantial perforations . . . and such major internal bleeding. Had defendants recognized what was happening at any time during the first hour after the perforations occurred, and taken appropriate measures, Ms. Amonoo's

---

[1]    In a footnote, plaintiffs claim they proceeded in the lower court "under the theory of *Summers v. Tice* (1948) 33 Cal.2d 80, which should relieve [them] of the burden of showing which among simultaneously negligent Defendants caused the death. . . ." We reject this argument, raised for the first time on appeal and unsupported by a citation to the record. (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894-895, fn. 10; *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.)

chances of survival would have been very good." Plaintiffs alleged "each defendant was the employer, employee, coworker, supervisor . . . of each of the other defendants, and was at all such times acting within the course and scope of such capacity or relationship, and each of the defendants is legally responsible . . . for each of the wrongful acts and omissions alleged herein, and legally caused the injuries and damages to plaintiffs. . . ."

Plaintiffs named St. Jude and Kosel as doe defendants in June 2010.

*Defendants' Summary Judgment Motion*

In 2011, defendants moved for summary judgment.[2] They argued: (1) they did not owe a legal duty to provide medical care to Amonoo; (2) Kosel did not assume a legal duty to provide medical care to Amonoo or to monitor her medical condition for a complication of surgery; and (3) there was no evidence Kosel was negligent, or that any such negligence caused Amonoo's death.[3] Defendants claimed they "owed no legal duty to surgically implant a pacemaker lead or diagnose a patient's medical condition, or to monitor a patient's medical condition for the purpose of diagnosing a complication from surgery." According to defendants, Dr. La Viola selected the pacemaker and leads he wanted to implant. Kosel did not implant the leads, nor did he direct or instruct Dr. La Viola how or where to implant them. Kosel operated the PSA and reported the readings to Dr. La Viola when Dr. La Viola tested the pacemaker for signal strength. Kosel did not undertake any responsibility to monitor Ms. Amonoo during or after the surgery, because such monitoring would have been outside the scope of his employment as a sales representative for St. Jude. Defendants argued they were added as doe defendants "solely because Mr. Kosel was in the operating room during Ms. Amonoo's surgery, which is standard procedure and required by Kaiser . . . ."

Kosel submitted a declaration in support of defendants' motion for summary judgment. In it, he averred: (1) he supplied the pacemaker that was sold to Dameron and

---

[2]     Defendants withdrew their first motion for summary judgment after the court denied their motion for a protective order barring Kosel's deposition.

[3]     Defendants also argued they were not proper party defendants. The trial court rejected this argument and we need not discuss it here because we conclude the court properly granted summary judgment on other grounds.

"prescribed by Ms. Amonoo's physician to treat her heart condition;" (2) as medical device vendors, "neither St. Jude nor its sales employees are licensed to practice medicine" and the practice of medicine would be outside the scope of his employment as a sales representative for St. Jude; (3) St. Jude sales representatives do not provide "post-operative medical care. . . . [they] support physicians by supplying measurements retrieved from devices;" and (4) he "did not voluntarily assume any duty to provide medical care to Ms. Amonoo, including post-operative care to discern whether she was suffering from any internal injury resulting from her surgery."

Defendants also submitted the deposition testimony of Dr. La Viola and Lee Vang, the "circulating nurse." Dr. La Viola testified Kosel "is positioned watching a machine, and when I want to test the lead, then he will read the machine and give me numbers that I will use to know whether or not I am in a good place." When asked whether Kosel's job was to identify the location of the "distress in the patient's heart," Dr. La Viola responded, "No. His job is to read this machine that is called the [PSA], and when I hook up my lead to this machine, it will give numbers, and then he reports the numbers to me. . . . What he's doing really does not have anything to do with the location but rather on the strength of the signal. It's almost like moving around an antenna and getting a good signal." Similarly, Vang testified the doctor — not Kosel — determines where to position the leads.

Finally, defendants submitted excerpts from Kosel's deposition, where he testified he brings the equipment to the operating room and provides the physician with "access to our analyzer and the data from our analyzer. . . ." When the physician "order[s] [Kosel] to give him numbers based upon the electrical parameters of that lead," Kosel provides it by "[p]ushing a few buttons" and then "report[s] the numbers that the [PSA] gives" by telling the doctor the numbers and/or showing the doctor the computer screen with the data. Kosel testified he did not advise Dr. La Viola on which leads to use, and he did not guide or direct Dr. La Viola where to place the leads. In addition, Kosel stated he did not know why Dr. La Viola repositioned the leads and explained such repositioning was based on "[p]hysician preference" and "physician[ ] discretion." According to Kosel,

4

doctors choose "to do whatever they need to do" regarding the lead position. Sales representatives "provide information. We don't provide opinion. We don't provide direction. We provide information. . . . We bring the products and provide the analysis."

*Plaintiffs' Opposition and Defendants' Reply*

In opposition, plaintiffs claimed Kosel was "active in guiding Dr. La Viola in the placement of the pacemaker lead" and that Dr. La Viola repositioned the lead "[u]nder the guidance and direction of Kosel[.]" According to plaintiffs, Kosel "came under a duty of care to Amonoo when he undertook to guide Dr. La Viola's placement of the insertion of the pacemaker leads into Ms. Amonoo's heart[.]" Plaintiffs contended Kosel "committed ordinary negligence" and that defendants were "liable under the 'negligent undertaking theory of liability' formalized in section 324A of the second Restatement of Torts[.]" Plaintiffs relied on *Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604 (*Artiglio*), a case describing the "negligent undertaking" theory of liability.[4]

Plaintiffs relied on virtually the same deposition testimony from Dr. La Viola and Vang as defendants. Plaintiffs also submitted a field contact report prepared by Kosel several months after the surgery, where he wrote "[i]t is suspected that the perforations may have resulted during an attempt to electrically map with, and subsequently fixate, the active fixation lead." In addition, plaintiffs submitted the declaration of their expert witness, Peter J. Curran, M.D., the Director of Cardiovascular Rehabilitation at St. Mary's Hospital in San Francisco. Among other things, Dr. Curran observed that one of the leads was "placed and attachment was attempted in four different locations within the right atrium. . . ." Dr. Curran opined that "more likely than not, the perforations of the atrium and a[or]ta occurred during the procedure implanting the pacemaker."

---

[4]      "'The foundational requirement of the good Samaritan rule'" or the "negligent undertaking theory" set forth in the Second Restatement of Torts, section 324A "'is that in order for liability to be imposed upon the actor, he must specifically have undertaken to perform the task that he is charged with having performed negligently, for without the actual assumption of the undertaking there can be no correlative duty to perform that undertaking carefully.'" (*Artiglio, supra,* 18 Cal.4th at pp. 614-615.)

Dr. Curran concluded "Dr. La Viola caused the lead to perforate the atrium and the aorta" because he was "not careful or attentive in his effort to reposition the lead. . . ." Dr. Curran explained that it was "virtually impossible" to puncture the aorta during surgery "without knowing that you did so" and that Dr. La Viola knew or should have known — or should have suspected — that Amonoo's "a[or]ta was at high risk for a puncture[.]" According to Dr. Curran, Dr. La Viola performed below the standard of care by using an "inordinate amount of pressure to reposition the lead" and by failing "to recognize the high risk of puncture." Dr. Curran also faulted Dr. La Viola for failing to monitor Amonoo for a longer period of time after the surgery; Dr. Curran explained that "there was a duty to consistently monitor the vital signs in a post-implantation patient in 'fair' condition with a 'severe systematic disease.'" Dr. Curran opined that "the perforation of the atrium and a[or]ta" along with the "failure to monitor both by [Dr.] La Viola and the nurses" led to Amonoo's death and fell below the standard of care.

In reply, defendants argued plaintiffs' evidence did not raise a triable issue of material fact because: (1) Dr. Curran opined that "the actions of the doctor and the hospital employees — not St. Jude — led to" Amonoo's death; (2) there was no evidence Kosel implanted the lead into Amonoo's heart or directed or instructed Dr. La Viola where to implant the lead or how much force to use when inserting the lead; (3) plaintiffs presented no evidence Kosel "undertook any duty to diagnose or monitor Ms. Amonoo's medical condition after surgery;" (4) there was no evidence Kosel selected the lead or acted negligently; and (5) there was no evidence defendants' alleged negligence caused Amonoo's death. Finally, defendants contended there was no evidence supporting plaintiffs' claim under section 324A of the Second Restatement of Torts.

*The Order Granting Summary Judgment for Defendants*

Following a hearing, the court granted summary judgment for defendants. It determined defendants satisfied their burden "of showing that Plaintiffs lack evidence to establish that Defendants had a duty of care to Ms. Amonoo with respect to the acts or omissions that allegedly caused her injury and death, and also that Plaintiffs lack evidence that any acts or omissions by Kosel breached his duty of care under the

6

circumstances or proximately caused the injury or death." The court determined defendants did not owe a duty of care to Amonoo regarding the manner in which the pacemaker was inserted into her chest or the alleged failure to monitor her condition after surgery.

The court further concluded *Kennedy, supra,* 851 N.E.2d 778 was "'on all fours'" because Kosel had a limited role "in connection with the procedure." Kosel did not implant the pacemaker or leads and did not instruct Dr. La Viola how or where to implant the leads. Instead, he provided "electrical performance measurements from the PSA" and did not undertake a duty to monitor Amonoo's medical condition or diagnose possible complications from the surgery. As the court explained, "Plaintiffs do not have evidence that any error in connection with the readings taken from the PSA caused Ms. Amonoo's injury and death. Instead, they allege that there may have been negligence in the perforation of the atrium and aorta during implantation of the pacemaker and/or lead, and that the post-operative monitoring by the physician and hospital were negligent." Finally, the court rejected plaintiffs' characterization of Dr. La Viola, Vang, and Kosel's deposition testimony and sustained defendants' objection to Curran's testimony that the leads were placed in Amonoo's heart "under the direction and instruction of the St. Jude sales representative . . . Kosel — insofar as he was the only one who knew how to operate the testing device."

The court entered judgment for defendants and plaintiffs timely appealed.

## DISCUSSION

## I.

### *Standard of Review*

"'We review the grant of summary judgment de novo. [Citation.] We make "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." [Citation.] A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action by showing that one or more elements of the cause

7

of action cannot be established or that there is a complete defense to that cause of action. [Citation.]  Once the defendant has made such a showing, the burden shifts back to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or as to a defense to the cause of action.  [Citation.]  [Citation.]'" (*Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1113 (*Howard*).)  "'In performing our de novo review, we view the evidence in the light most favorable to plaintiffs as the losing parties.  [Citation.]  In this case, we liberally construe plaintiffs' evidentiary submissions and strictly scrutinize defendants' own evidence, in order to resolve any evidentiary doubts or ambiguities in plaintiffs' favor.'  [Citation.]" (*Id.* at pp. 1113-1114.)

## II.
### *Plaintiffs Had an Adequate Opportunity to Conduct Discovery Before Opposing the Motion for Summary Judgment*

Plaintiffs repeatedly claim the court erred by granting summary judgment because they did not have a sufficient amount of time to conduct discovery.  According to plaintiffs, they were unable to "marshal a detailed factual case in opposition to Defendants['] summary judgment motion," apparently because defendants made "a series of maneuvers" such as trying to prevent Kosel's deposition.  This argument fails for three reasons.  First, it is not supported by any authority.  (*Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1007, fn. omitted [failure to support contention with authority "constitutes a waiver of the issue on appeal"].)  Second, it is inaccurate because plaintiffs had ample time to conduct discovery to support their opposition.  Plaintiffs deposed Dr. La Viola in May 2010, over a year before defendants moved for summary judgment; they deposed Kosel in May 2011, three months before defendants filed the motion.  Third, plaintiffs waived this argument by not moving to continue the summary judgment hearing pursuant to Code of Civil Procedure, section 437c, subdivision (h), which allows a party to request a continuance to obtain facts essential to justify opposition" to a motion for summary judgment.  (Code Civ. Proc., § 437(c), subd. (h); see also *Zamudio v. City and County of San Francisco* (1999) 70 Cal.App.4th 445, 454

8

[plaintiff waived objection to defendant's apparent failure to produce discoverable documents by failing to seek a continuance of the hearing pursuant to Code of Civil Procedure, section 437c, subdivision (h)].) As discussed below, the court granted defendants' motion for summary judgment because plaintiffs could not — even after conducting discovery — produce admissible evidence supporting the elements of their claims.

III.
*The Court Properly Concluded Defendants*
*Met Their Burden of Proof*

Plaintiffs contend the court erred by granting summary judgment because defendants "failed even to meet their initial burden of production[.]" Relying on *Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64 (*Scheiding*) and several other cases, plaintiffs claim defendants did not satisfy their burden of production because they pointed to a lack of evidence supporting plaintiffs' claims rather than offering any "affirmative evidence."

Plaintiffs reliance on *Scheiding* is misplaced. In that case, a defendant in an asbestos case failed to engage in meaningful discovery as to the basis of the plaintiff's claims. (*Sheiding, supra,* 69 Cal.App.4th at p. 67.) The defendant moved for summary judgment, claiming the plaintiff had no evidence supporting a case against it. (*Id.* at pp. 80, 82.) A division of this court reversed summary judgment granted for the defendant because the plaintiff had never been asked whether he had any evidence linking the defendant to the areas where he worked. The *Scheiding* court explained that "the duty to answer completely only extended so far as the reasonable ambit of the questions which were asked. The plaintiff had no duty to volunteer information that was not requested." (*Id.* at p. 80.)

*Scheiding* has no bearing here. Here and in contrast to *Scheiding*, defendants demonstrated — through Kosel's declaration and through the deposition testimony of Kosel, Vang, and Dr. La Viola — that defendants were not responsible for the perforations in Amonoo's heart or for the alleged failure to monitor her during or after

9

the surgery. Plaintiffs misapprehend defendants' burden as the moving party. Defendants had no duty, as plaintiffs urge, to "submit evidence fully within their knowledge and control concerning Mr. Kosel's specific duties in assisting a surgeon performing a pacemaker implantation, and whether he met them or fell short in this case."

Because defendants satisfied their burden, the burden shifted to plaintiffs to show a triable issue of fact. (Code Civ. Proc., § 437c, subd. (p)(2).) Plaintiffs did not.

IV.

*The Court Properly Concluded Plaintiffs Did Not*
*Raise a Triable Issue of Material Fact*

Plaintiffs contend they "adduced sufficient evidence of Mr. Kosel's duty and breach to raise [triable] issues of fact" because Kosel "played an active role in the procedure" by guiding Dr. La Viola "in his placement of the leads." They also contend Kosel acknowledged the perforations in Amonoo's heart "may have resulted during an attempt to electrically map with, and . . . fixate, the active fixation lead." According to plaintiffs, this evidence creates an inference that Kosel contributed to Amonoo's death by misguiding Dr. La Viola or by failing to alert him to the "faulty positionings of the pacemaker leads. . . ."

This argument ignores and mischaracterizes the evidence in the record and, in any event, does not create a triable issue of material fact. The evidence demonstrated Kosel's role in the surgery was limited. He was a sales representative who operated the PSA. He did *not* instruct or direct Dr. La Viola on how or where to implant the leads. As Kosel explained, the doctors choose "to do whatever they need to do" regarding the position of the leads. Kosel continued, "We provide information. We provide opinion. We don't provide direction. We provide information. . . . We bring the products and provide the analysis." Similarly, Dr. La Viola testified Kosel's job was to read the PSA and report the numbers to him. Vang testified that the doctor, not Kosel, determines where to place the leads. That Kosel suspected the perforations "may" have resulted during the placement process does not demonstrate the perforations resulted from an error or breach of duty by Kosel.

10

Plaintiffs rely on a passage from *Artiglio, supra,* 18 Cal.4th 604 to support their contention that summary judgment was inappropriate because their negligent undertaking theory of liability "hinges on facts which must be determined at trial." In *Artiglio*, silicone breast implant recipients sued the implant maker, Dow Corning Corporation (Dow Corning). They also sued the implant maker's parent corporation, The Dow Chemical Company (Dow Chemical) under a "'Good Samaritan' or negligent undertaking liability articulated in [Restatement Second of Torts], section 324A." Plaintiffs argued "Dow Chemical owed them a duty of care in the conduct and reporting of its silicone toxicology research for Dow Corning." (*Id.* at p. 614.) The trial court granted Dow Chemical and Dow Corning's summary judgment motions, concluding neither defendant owed a duty of care to the plaintiffs. (*Id.* at p. 611.)

The California Supreme Court affirmed.[5] It concluded that when Dow Chemical "conducted and reported silicone toxicology research for Dow Corning, . . . any risk of physical harm to plaintiffs from negligent performance of that undertaking was unforeseeable." (*Artiglio, supra,* 18 Cal.4th at p. 608.) In reaching this conclusion, the *Artiglio* court explained, "whether Dow Chemical's alleged actions, if proven, would constitute an 'undertaking' sufficient, within the meaning of section 324A's negligent undertaking theory, to give rise to an actionable duty of care is a legal question for the court. In some cases, however, as Dow Chemical acknowledges, there may be fact questions 'about precisely what it was that the defendant undertook to do.' That is, while '[t]he "precise nature and extent" of [an alleged section 324A] duty "is a question of law . . . "it depends on the nature and extent of the act undertaken, a question of fact."'" [Citation.] Thus, if the record can support competing inferences [citation], or if the facts are not yet sufficiently developed . . . ""'an ultimate finding on the existence of a duty cannot be made prior to a hearing on the merits"'" [citation], and summary judgment is precluded. [Citations.] . . . [¶] Our de novo review of the record [citation] in light of

---

[5] In their reply brief, plaintiffs contend *Artiglio* held "the case was not amenable to summary judgment. . . ." Plaintiffs are wrong. The California Supreme Court upheld the trial court's grant of summary judgment for Dow Chemical.

11

these principles reveals that no triable issue of fact concerning the scope of Dow Chemical's undertaking to Dow Corning remains to foreclose resolution of this matter on summary judgment." (*Id.* at pp. 615-616.)

Here as in *Artiglio,* there is "no triable issue of fact concerning the scope of [Kosel's] undertaking. . . ." (*Artiglio, supra,* 18 Cal.4th at p. 616.) As discussed above, the evidence established Kosel did not determine how or where to implant the leads, nor did he undertake a duty to monitor Amonoo. As such, the court properly granted summary judgment for defendants.

V.

*The Court Did Not Err by Relying on Kennedy*

Plaintiffs' final claim is the court "over-relied" on *Kennedy, supra,* 851 N.E.2d at page 778, apparently because the case is distinguishable. In *Kennedy*, the decedent died following the implantation of a pacemaker and lead manufactured by Medtronic and his daughter sued Medtronic for negligence and wrongful death. Heather Friedman, a representative of Medtronic, was present during the surgery and "provided technical support to ensure the lead parameters were correctly calibrated and the lead was functioning properly." (*Id*. at p. 781.) The plaintiff argued Medtronic was liable under section 324A of the Second Restatement of Torts for breaching a duty "to assist with the insertion [of the pacemaker] in a reasonable manner" during the surgery. (*Id.* at p. 782.)

An Illinois trial court granted Medtronic's motion for summary judgment and the appellate court affirmed. (*Kennedy, supra,* 851 N.E.2d at p. 782.) The *Kennedy* court held that Friedman's limited role in the procedure — to "provide technical support and ensure that the lead parameters were correctly calibrated and the lead was functioning properly" — "did not entail her voluntarily assuming a duty, under section 324A of the Restatement (Second) of Torts, for the placement of the lead into the correct ventricle of the patient's heart." (*Id.* at p. 787.) The result reached in *Kennedy* is consistent with California law. Therefore, to the extent the trial court relied on that case, its reliance was not misplaced.

Plaintiffs claim *Kennedy* is distinguishable because defendants failed to present evidence "acquitting Mr. Kosel of the duty to assist, guide, or warn the surgeon. . . ." We disagree. As discussed above, defendants established Kosel did not direct or instruct Dr. La Viola how or where to insert the leads into Amonoo's heart. Plaintiffs presented no evidence Kosel undertook to guide Dr. La Viola in the placement of the leads or otherwise assumed any legal duty to do so with reasonable care. Defendants also presented evidence that Kosel did not assume a duty to monitor Amonoo during or after the surgery: to do so would have been outside the scope of his employment.

## DISPOSITION

The judgment is affirmed.

_____
Jones, P.J.

We concur:

_____
Simons, J.

_____
Bruiniers, J.

13

Filed 6/19/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **AUDREY SMITH et al.,** | **A135338** |
| **Plaintiffs and Appellants,** | |
| **v.** | **(Alameda County Super. Ct. No. RG09470457)** |
| **ST. JUDE MEDICAL, INC. et al.,** | **ORDER CERTIFYING OPINION FOR PUBLICATION** |
| **Defendants and Respondents.** | |
| _____/ | |

BY THE COURT:

The opinion in the above-entitled matter filed on May 21, 2013, was not certified for publication in the Official Reports. On June 10, 2013, a request for publication was filed as authorized by California Rules of Court, rule 8.1120(a). Good cause appearing, this court grants the request and orders the opinion certified for publication pursuant to California Rules of Court, rule 8.1105(b), (c).

Date _____                    _____ P.J.

1

Superior Court of the County of Alameda, No. RG09470457, Robert Freedman, Judge

Law Office of Tesfaye W. Tsadik, Tesfaye W. Tsadik and Alan S. Levin, M.D., for Plaintiffs and Appellants

Burke, Williams & Sorenson, LLP, Eric A. Gale and Feldman Gale, Todd M. Malynn for Defendants and Respondents