Filed 1/31/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PRISCILLA O'MALLEY et al., | |
| Plaintiffs and Appellants, | G054724 |
| v. | (Super. Ct. No. 30-2015-00771021) |
| HOSPITALITY STAFFING SOLUTIONS, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Sheila Fell, Judge. Reversed.

Biren Law Group, Anne M. Huarte, John A. Roberts and Matthew B.F. Biren for Plaintiffs and Appellants.

Wood, Smith, Henning & Berman, Damon M. Pitt and Steven Lee Rodriguez; Greines, Martin, Stein & Richland, Robert A. Olsen and Cynthia E. Tobisman for Defendant and Respondent.

\*                 \*                 \*

Ordinarily, a person has no legal duty to come to the aid of another. But if a person does come to the aid of another, and does so without exercising reasonable care, that person may be responsible for any damages caused under a "negligent undertaking" theory of liability. (*Paz v. State of California* (2000) 22 Cal.4th 550, 558-559 (*Paz*).)

Here, a woman checked into a hotel room in the early evening. She did not answer her husband's calls for several hours. He suspected that she may have been injured. The husband called the hotel and a maintenance worker checked the room. The worker reported that no one was there. Hours later, the husband went to the hotel room and found his wife lying on the floor. She had suffered a brain aneurism.

The couple sued the hotel and the maintenance worker's employer (a staffing agency) for negligence. The agency filed a motion for summary judgment, arguing that it owed no legal duty to the married couple. The trial court granted the motion and the couple appeals (the hotel itself is not a party to this appeal).

Under a negligent undertaking theory, we cannot say as a matter of law that the maintenance worker owed no legal duty. There are triable issues of material fact. We find that the trial court improperly granted summary judgment and reverse.


I

FACTS AND PROCEDURAL BACKGROUND

On March 29, 2014, at about 4:00 p.m., Priscilla O'Malley arrived at a Capistrano Beach hotel. Priscilla and her husband Michael lived about an hour away and owned timeshare privileges at the hotel. The front desk clerk, Kora Mann, who was employed by the hotel, checked Priscilla into a room. At about 5:30 p.m., Priscilla's husband Michael spoke to Priscilla by phone. At about 6:00 p.m., Priscilla spoke to her sister and told her that she was going to stay in for the evening.

Starting at about 7:00 p.m., Michael repeatedly called Priscilla's cell phone, but she did not answer. The couple ordinarily phoned each other on a regular basis. At

2

9:00 p.m., Michael became concerned and called the front desk to find out which room Priscilla had checked into. Over the next hour and a half, Michael made three more calls into Priscilla's room and another call to her cell phone, all of which went unanswered.

At about 10:30 p.m., Michael spoke to Mann at the front desk and asked for her help. Michael explained that his wife was not answering his calls and that he was worried that something might be wrong: specifically, that she might have injured herself and could not get to the phone. Michael wanted to see if Mann could send someone to the room in order to see if his wife was there, and if so, if she was okay. While Michael was on the phone, Mann called into the room and got no answer.

Mann told Michael that a maintenance worker (Saul Ramos) was standing right next to her at the front desk. Ramos was employed by Hospitality Staffing Solutions LLC (HSS), an agency that supplied maintenance staff to the hotel. Mann told Michael that she would have Ramos check the room. Mann instructed Ramos to go to the room and see if Priscilla was there. Ramos understood that Michael was trying to find out whether his wife was in the room, and if she was there, why she was not answering the phone. Ramos had been working at the hotel for a year, but he had never before been asked to do a welfare check of a guest in a room.

Ramos said that he went to the room, knocked several times on the door, and announced, "Maintenance." Ramos said that he opened the door, took one step into the room, and called out asking if anyone was there. He said that all the lights were off. Ramos said that when he stared into the dark room he could only see the shapes of the furniture.

Ramos returned to the front desk and told Mann that no one was in the room. Mann called Michael and related what Ramos had told her. Between 10:30 p.m. and 4:00 a.m., the next morning, Michael called Priscilla a dozen more times. At about 4:00 a.m., Michael decided to drive to the hotel to look for clues as to where Priscilla might be. Michael entered the room at about 5:00 a.m., and noticed that the bedroom and

3

bathroom lights were on.  Michael heard labored breathing; he saw Priscilla lying on the living room floor.  Priscilla was taken to the hospital.  It was later determined that she had suffered a brain aneurism.  Priscilla continues to have memory disturbance, difficulty with balance, and other deficits.  A doctor averred that Priscilla's injuries would have been less severe had she received treatment earlier in the evening.

On February 10, 2015, Michael and Priscilla filed a complaint alleging negligence and loss of consortium.  The O'Malleys later amended the complaint to add HSS (the employer of maintenance worker Ramos) as a Doe defendant.[1]  The trial court granted summary judgment in favor of HSS.  The O'Malleys appeal.


II

DISCUSSION

Summary judgment "provide[s] courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 844.)  The trial court properly grants the motion if all the papers submitted establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law.  (*Id.* at p. 843; Code Civ. Proc., § 437c, subd. (c).)

The moving party bears the initial burden to make a prima facie showing that no triable issue of material fact exists.  (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 843.)  If this burden is met, the party opposing the motion bears the burden of showing the existence of disputed facts.  (*Ibid.*)  Courts "'construe the moving party's affidavits strictly, construe the opponent's affidavits liberally, and resolve doubts about the propriety of granting the motion in favor of the party opposing it.'"  (*Seo v. All-Makes Overhead Doors* (2002) 97 Cal.App.4th 1193, 1201-1202.)

---

[1] Again, HSS is the only defendant involved in this appeal.

4

We review the trial court's decision de novo. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65, 67-68.) "In determining if the papers show that there is no triable issue as to any material fact, the court shall consider all of the evidence set forth in the papers . . . and all *inferences* reasonably deducible from the evidence, . . . summary judgment shall not be granted by the court based on *inferences* reasonably deducible from the evidence if contradicted by other *inferences* or evidence that raise a triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c), italics added.)

Here, Ramos's employer, HSS, argues that it owed Priscilla and Michael O'Malley no duty of care. The O'Malleys argue there are disputed facts raising a reasonable inference that Ramos may have created a duty of care under the "negligent undertaking" theory of liability. We agree with the O'Malleys.

*The Negligent Undertaking Theory of Liability*

"The general rule is that a person who has not created a peril is not liable in tort for failing to take affirmative action to protect another unless they have some relationship that gives rise to a duty to act. [Citation] However, one who undertakes to aid another is under a duty to exercise due care in acting and is liable if the failure to do so increases the risk of harm or if the harm is suffered because the other relied on the undertaking." (*Paz*, *supra*, 22 Cal.4th at pp. 558-559.)

"Thus, . . . a negligent undertaking claim of liability to third parties requires evidence that: (1) the actor undertook, gratuitously or for consideration, to render services to another; (2) the services rendered were of a kind the actor should have recognized as necessary for the protection of third persons; (3) the actor failed to exercise reasonable care in the performance of the undertaking; (4) the actor's failure to exercise reasonable care resulted in physical harm to the third persons; and (5) *either* (a) the actor's carelessness increased the risk of such harm, or (b) the actor undertook to perform a duty that the other owed to the third persons, or (c) the harm was suffered because

5

either the other or the third persons relied on the actor's undertaking." (*Paz*, *supra*, 22 Cal.4th at p. 559.)

The elements of a negligence claim are: a legal duty of care, a breach of that duty, and an injury proximately caused by the breach. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477.) Ordinarily, the existence of a duty and the scope of that duty are legal issues determined by courts. (*O'Neil v. Crane Co.* (2012) 53 Cal.4th 335, 364; *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 294 [an attorney owes a duty of care to his or her client of "'conscientious fidelity'"]; *Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1077 [a physician owes his or her patients the duty to "use such skill, prudence, and diligence as other members of [the] profession commonly possess and exercise"]; *Lawrence v. La Jolla Beach & Tennis Club, Inc.* (2014) 231 Cal.App.4th 11, 23 [landlords have a duty to exercise reasonable care to maintain property in a safe condition and the scope of that duty depends on "the particular facts of the case"].)

However, under a negligent undertaking theory of liability, the scope of a defendant's duty presents a jury issue when there is a factual dispute as to the nature of the undertaking. (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 615-616.) The issue of "whether [a defendant's] alleged actions, if proven, would constitute an 'undertaking' sufficient . . . to give rise to an actionable duty of care is a legal question for the court." (*Id.* at p. 615.) However, "there may be fact questions 'about precisely what it was that the defendant undertook to do.' That is, while '[t]he "precise nature and extent" of [an alleged negligent undertaking] duty "is a question of law . . . 'it depends on the nature and extent of the act undertaken, a question of fact.'"' [Citation.] Thus, if the record can support competing inferences [citation], or if the facts are not yet sufficiently developed [citation], '"an ultimate finding on the existence of a duty cannot be made prior to a hearing on the merits"' [citation], and summary judgment is precluded. [Citations.]" (*Ibid.*; see CACI No. 450C [each element of the negligent undertaking theory of liability is resolved by the trier of fact].)

6

*Application and Analysis*

In this case, we find that there are disputed material facts and inferences regarding precisely what the maintenance worker, Ramos, may have undertaken to do. The clerk at the front desk, Mann, said that she told Ramos "to knock on [Priscilla O'Malley's] room . . . and if she did not answer the door, to open the door and look in and see if she was in there." Ramos described what Mann had told him somewhat differently. Ramos said that, "I was told to go check on her, to go to [her] room and see if she's there."

Ramos was present at the front desk during the phone conversation when Michael told Mann his concerns about his wife's possible injuries. Although Ramos apparently heard only one side of the conversation, it is a reasonable inference that Ramos may have been alerted to the apparent urgency of Michael's request. This was the first time Ramos had ever been asked to go to a room to check on a hotel guest. Further, Ramos understood that Michael was trying to find out whether his wife was in the room, and if she was there, why she was not answering the phone. The risk that Priscilla may have been lying incapacitated somewhere in the hotel room (beyond the threshold of the front door) may have been reasonably foreseeable. Therefore, the scope of Ramos' duty may have been more than simply opening the door and peering inside what Ramos claimed was a dark room.

The case of *Bloomberg v. Interinsurance Exchange* (1984) 162 Cal.App.3d 571 (*Bloomberg*), is instructive. In *Bloomberg*, a car broke down on the freeway and the two people in the car made arrangements to have the Automobile Club (AAA) send a tow truck for assistance. Unfortunately, the AAA driver was unable to locate the car, and an intoxicated driver struck the passenger of the stranded vehicle, killing him. The trial court ruled that as a matter of law AAA could not be held liable; the Court of Appeal reversed. (*Id*. at pp. 574-575.) "Generally if the risk of injury might have been reasonably foreseen, a defendant is liable." (*Id*. at p. 576.)

7

"A defendant who enters upon an affirmative course of conduct affecting the interests of another is regarded as assuming a duty to act, and will be liable for negligent acts or omissions." (*Bloomberg*, *supra*, 161 Cal.App.3d at p. 575.) The appellate court held that once AAA had agreed to render aid, it had assumed a duty to do so in a nonnegligent manner. (*Id*. at p. 575.) "To the extent that [the two people in the car] relied on respondent to come to their assistance and in so relying made no other arrangements for their rescue, to that extent respondent contributed to the risk of harm." (*Id*. at p. 576.) The court found that foreseeability of the risk—that a drunk driver would run into a stranded car— was a question of fact for the jury. (*Id*. at p. 577.)

Here, we find that a reasonable trier of fact might infer that Ramos assumed a duty to check on whether Priscilla was in her hotel room, and if she was there, why she was not answering the phone. If Ramos had such a duty, the scope of his duty would depend on the nature of the harm that was foreseeable. The risk that Priscilla was incapacitated and needed assistance may have been reasonably foreseeable, but this is a jury question, similar to the situation in *Bloomberg*. Further, it appears that Michael may have relied on Ramos's representation that Priscilla was not in the room, and that he delayed coming to the hotel, thereby possibly exacerbating Priscilla's injuries. In sum, a trier of fact may ultimately decide that some portion of the O'Malleys' injuries were the result of a lack of reasonable care exercised by Ramos (and ultimately his employer) under a negligent undertaking theory of liability. (See *Juarez v. Boy Scouts of America, Inc*. (2000) 81 Cal.App.4th 377, 393 [respondeat superior liability when an "employee engages in tortious conduct while acting within the course and scope of employment"].)

HSS argues that: "A third party cannot just barge in on a spouse in the privacy of a residential space because another spouse directed him to do so." But this argument really goes to the issue of breach: whether any duty Ramos may have undertaken was arguably excused (as HSS argues) or breached (as the O'Malleys argue). It is settled law that in a negligence claim, any questions concerning breach (or causation)

8

must be resolved by the trier of fact.  (*Vasquez v. Residential Investments, Inc*. (2004) 118 Cal.App.4th 269, 278.)

Indeed, the O'Malleys contend that Ramos may not have actually opened the door and peered inside the hotel room (as he claims he did), based on a factual dispute as to whether the lights were off (as Ramos contends) or on (as Michael contends). Further, according to the O'Malleys, had Ramos actually opened the door he might have been able to hear Priscilla's labored breathing.  But these are all issues concerning the element of breach; they cannot be resolved in a summary judgment motion.

III

DISPOSITION

The judgment is reversed.  The trial court's order granting defendant's motion for summary judgment is vacated.  The court is directed to enter a new order denying defendant's motion for summary judgment.  The plaintiffs are awarded their costs on appeal.

MOORE, ACTING P. J.

WE CONCUR:

THOMPSON, J.

IKOLA, J.

9